UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WENDY J. GOFF,

                        Plaintiff,

            V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

**DECISION AND
ORDER**

09-CV-1392
(VEB)

## I. INTRODUCTION

In January of 2006, Plaintiff Wendy Goff filed an application for disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since January of 2005 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Olinsky & Shurtliff, Jaya A. Shurtliff, Esq., of counsel,[1] commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties, by and through their respective counsel, consented to the jurisdiction of the undersigned on December 2, 2011. (Docket No. 22).

---

[1]Karen S. Southwick, Esq. was substituted as Plaintiff's attorney on November 22, 2011. (Docket No. 21).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on January 4, 2006, alleging disability beginning on January 5, 2005. (T at 93-95).[2]  The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York, before ALJ Dennis O' Leary on August 7, 2008.[3] (T at 26).  Plaintiff appeared with an attorney and testified. (T at 30-40).

On November 4, 2008, ALJ O'Leary issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 19-25).  The ALJ's decision became the Commissioner's final decision on June 16, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 12-15).

Plaintiff, through counsel, commenced this action on December 15, 2009.(Docket No. 1).  On March 3, 2010, the Honorable Thomas J. McAvoy, Senior United States District Judge, issued a Consent Order remanding the case pursuant to sentence 6 of 42 U.S.C. § 405 (g). (T at 6-7, Docket No. 8).  The remand was necessary because, at the time, the Commissioner was unable to locate the administrative transcript. (Docket No. 10).  However, the transcript was thereafter located and the case was reopened by an Order entered on October 6, 2010. (Docket No. 12).

The Commissioner interposed an Answer on October 15, 2010. (Docket No. 13).  Plaintiff filed a supporting Brief on December 29, 2010. (Docket No. 16).   The

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[3]Plaintiff and her attorney appeared in Syracuse.  The ALJ participated via videoconference from Newark, New Jersey. (T at 19).

Commissioner filed a Brief in opposition on February 14, 2011. (Docket No. 18).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2005, which the ALJ identified as the application date.[6]  (T at 21).  The ALJ concluded that Plaintiff had the following "severe" impairments: chronic obstructive pulmonary disease ("COPD") and depression. (T at 21).

---

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

[6]Plaintiff lists an application date of January 4, 2006, which appears consistent with the records. (T at 93-95).  However, no party has raised this apparent discrepancy as an issue in the case.

5

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 21-22).  The ALJ concluded that Plaintiff retained the residual functional capacity to perform medium work, as defined in 20 CFR § 416.967 (c), but that she was limited to moderate walking and climbing, simple and repetitive tasks, and should not be exposed to chemical irritants. (T at 22-24).

The ALJ found that Plaintiff was unable to perform her past relevant work as a housekeeper, pet store laborer, or newspaper delivery person. (T at 24).  However, considering Plaintiff's age (38 years old as of the application date), education (limited), and residual functional capacity, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 24-25).  In addition, the ALJ found that Plaintiff failed to follow prescribed treatment (namely, smoking cessation), which the ALJ determined would restore her ability to work, and offered no acceptable reason for such failure. (T at 25).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act and was therefore not entitled to benefits. (T at 25).  As noted above, the ALJ's decision became the Commissioner's final decision on June 16, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 12-15).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers five (5) principal arguments in support of this position.  First, Plaintiff contends that the ALJ should have found her headaches and right knee injury to be severe impairments.  Second, Plaintiff argues that the ALJ did not properly apply the treating physician's rule.  Third,

Plaintiff asserts that the ALJ did not properly evaluate her credibility.   Fourth, Plaintiff contends that the ALJ should have consulted a vocational expert.  Fifth, Plaintiff argues that the ALJ erred with respect to his finding regarding Plaintiff's tobacco use.  This Court will address each argument in turn.

### a.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's

ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff points to records documenting complaints of migraine headaches. (T at 271, 327, 538). In 2004, she received prescription treatment (Imitrex and Esgic) for migraine headaches. (T at 361). In addition, Plaintiff notes evidence of a 1999 injury, which resulted in ongoing right knee pain. (T at 237-38, 336). Dr. Smallman, a treating physician, opined in October of 2001 that Plaintiff's right knee pain rendered her totally disabled. (T at 239). Treatment for knee pain continued in 2002. (T at 325, 328, 331, 336).

The ALJ found that Plaintiff's COPD and depression were severe impairments, but did not mention her headaches or knee pain. (T at 21). Plaintiff argues that this was reversible error because these conditions were severe impairments, as defined under the Social Security Act. This Court finds Plaintiff's argument unpersuasive.

As a threshold matter, Plaintiff did not adequately identify her headaches as a disabling condition during the administrative review process. During the hearing before the ALJ, when asked to identify "problem[s] with her medical health," Plaintiff listed breathing problems, asthma, COPD, and interstitial lung disease. (T at 31). She later mentioned gastroesophageal reflux disease, but made no reference to headaches. (T at 38-39). Likewise, although Plaintiff made some reference to arthritis pain in her knees during the administrative process (T at 66, 102), she did not bring those conditions to the ALJ's attention when asked to describe her health problems at the administrative hearing. (T at 31, 38-39). With that said, the record did contain evidence of these conditions and the ALJ likely should have addressed whether they rose to the level of severe impairments.

However, any error by the ALJ in this regard does not provide a basis for remand.

First, there was no evidence that Plaintiff's headaches or knee pain caused more than a minimal impact on her ability to perform basic work activities during the period following her application for benefits in December 2005. Although Plaintiff was treated with prescription medication for her headaches in 2004 (T at 361), that treatment had apparently been discontinued by February of 2006. (T at 536). With regard to knee pain, Plaintiff points primarily to medical records documenting her complaints, rather than clinical findings of limitations related to knee problems. (T at 237, 336). A February 2006 x-ray revealed "mild" degenerative changes with regard to Plaintiff's right knee. (T at 529). Dr. Ganesh, a consultative examiner, noted that Plaintiff had a normal gait and could walk on heels and toes without difficulty. (T at 526). He assessed no limitations with regard to sitting or standing, and mild limitations with respect to walking and climbing (however, it is not clear whether these mild limitations were related to Plaintiff's breathing problems, her knee pain, or both). (T at 528).

Second, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act namely, COPD and depression) and continued with the sequential analysis, any errors in his findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him

9

to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

Accordingly, this Court finds no reversible error with regard to the ALJ's analysis at step two of the sequential evaluation process.

### b.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

10

treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

### i.   Dr. LoDolce

In the present case, Dr. James LoDolce, Plaintiff's treating physician, completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form in September of 2008. Dr. LoDolce noted Plaintiff's diagnosis of "severe COPD" and opined that she was limited to occasionally lifting/carrying 10 pounds (but never more than that), standing for 3 hours in an 8-hour workday, and walking for 1 hour in an 8-hour workday. (T at 569-72). Dr. LoDolce also indicated that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl. (T at 572).

The ALJ dismissed Dr. LoDolce's opinion with a single sentence, in which the ALJ indicated that the treating physician's opinion was "contradicted by the remainder of the medical record." (T at 23). The ALJ's statement is factually inaccurate and his analysis is legally inadequate.

The record documented several hospitalization for breathing problems (T at 321, 327, 332, 346, 377-83, 386, 578), treatment with a long-acting bronchodilator (T at 408, 494, 497, 499), and the use of an oxygen tank. (T at 23, 407, 418). Two other treating providers (Dr. Octaviani and Dr. Weiskopf) opined that Plaintiff was disabled from all work activity due to her medical conditions. (T at 255-56, 263-64). Although these opinions were rendered prior to the relevant time period, they provide significant support for Dr. LoDolce's

11

assessment.  Dr. Ganesh, the consultative examiner, assessed only mild limitations with regard to walking and climbing (and no limitations sitting or standing), but did describe Plaintiff's lung obstruction as "moderate severe." (T at 528).  As such, contrary to the ALJ's conclusory statement, there is support in the record for Dr. LoDolce's opinion.

Moreover, given the support in the record for the treating physician's opinion, the ALJ was obliged to re-contact him before disregarding his assessment.  An ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Accordingly, this Court finds that a remand is required for reconsideration of Dr. LoDolce's opinion consistent with the foregoing.

### ii.    Depression

Plaintiff also contends that the ALJ should have afforded controlling weight to opinions rendered by treating providers to the effect that her depression was disabling.

However, only one of the opinions cited by Plaintiff was provided by a physician (Dr. Reddy). (T at 253). Moreover, Dr. Reddy's opinion (that Plaintiff was unable to work due to anger control and depression) was rendered in September of 2003, two years before the relevant time period, and was limited to a 6-month period. (T at 253).   The other two opinions were also rendered prior to the relevant time period and were not provided by "acceptable medical sources." (T at 260-61, 265-66).

In 1999, Anne Bennett, a nurse practitioner, opined that Plaintiff's mental health issues rendered her unable to work. (T at 265-66).  In 2003, Harvey Delson (who identified himself as a "therapist") provided a similar opinion, although he indicated that the work limitation was expected to last only three months. (T at 260-61).

However, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502.  There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Nurse practitioners and therapists are not included within those categories.  Although such providers are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work, their conclusions are not entitled to any special weight. 20 C.F.R. § 416.913 (d)(1).

The ALJ concluded that Plaintiff's depression limited her to simple and repetitive tasks, but concluded that Plaintiff's mental impairment caused only "mild to moderate restrictions in cognitive functioning," which did not preclude her from maintaining

13

competitive, remunerative employment. (T at 23).  This aspect of the ALJ's decision was supported by substantial evidence.

A consultative examiner by Dr. Noia in February of 2006 indicated that Plaintiff could understand and follow simple instructions and directions; perform simple and complex tasks with supervision and independently; maintain attention and concentration for tasks; regularly attend to a routine and maintain a schedule; learn new tasks; and make appropriate decisions. (T at 538).[8]  Dr. Morog, a non-examining State Agency review consultant, opined that Plaintiff had mild limitations with regard to activities of daily living and maintaining social functioning; and moderate difficulties with respect to maintaining concentration, persistence, or pace. (T at 550).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are

---

[8]Dr. Noia did note difficulty dealing with stress, but also found that Plaintiff appeared to be able to relate to and interact with others "moderately well." (T at 538).

conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

In light of the foregoing, this Court finds that the ALJ's conclusion with respect to the nature and extent of the limitations imposed by Plaintiff's mental health difficulties was supported by substantial evidence.

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the claimant's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v.

16

Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (T at 22).

The ALJ's decision to discount Plaintiff's credibility with respect to her respiratory impairments was based in necessary part upon his assessment of Dr. LoDolce's opinion. (T at 23).  However, the ALJ's consideration of Dr. LoDolce's opinion was flawed for the reasons stated above.  As such, the question of Plaintiff's credibility as to her physical limitations will need to be revisited on remand after the ALJ reassesses Dr. LoDolce's opinion.  In addition, to the extent the ALJ discounted Plaintiff's credibility due to her failure to follow recommended treatment (i.e. because she did not quit smoking), that aspect of the ALJ's credibility assessment will also need to be revisited on remand for the reasons stated below in section (e).

In contrast, this Court finds no error as to the ALJ's finding concerning Plaintiff's mental impairments.  As outlined above, the ALJ's conclusion that Plaintiff's depression limited her to simple, repetitive work, but did not otherwise preclude her from performing basic work activities, was supported by substantial evidence.

### d.    Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to (1) assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then (2) determine whether jobs exist in the national

17

economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §
404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66
(1983). The second part of this process is generally satisfied by referring to the applicable
rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P,
Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601,
604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v.
Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the
> sequential evaluation process described above, the
> Commissioner, under appropriate circumstances, may rely on
> the medical-vocational guidelines contained in 20 C.F.R. Part
> 404, Subpart P, App. 2, commonly referred to as "the Grid."
> The Grid takes into account the claimant's residual functional
> capacity in conjunction with the claimant's age, education and
> work experience. Based on these factors, the Grid indicates
> whether the claimant can engage in any other substantial
> gainful work which exists in the national economy. Generally
> the result listed in the Grid is dispositive on the issue of
> disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements
of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and
very heavy, based on the extent of requirements in the primary strength activities of sitting,
standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. §
404.1567(a). Upon consideration of the claimant's residual functional capacity, age,
education, and prior work experience, the Grid yields a decision of "disabled" or "not
disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id.   A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In this case, the ALJ concluded that Plaintiff retained the RFC to perform medium work, with some non-exertional limitations (i.e. simple and repetitive work that did not involve exposure to pulmonary irritants). (T at 25)  However, the ALJ found that Plaintiff's non-exertional impairments had little to no effect on the occupational base of unskilled

19

work.  As such, the ALJ applied the framework of Medical-Vocational Rule 203.25 and found Plaintiff to be "not disabled." (T at 25).   The ALJ's finding at this step of the sequential evaluation was necessarily based upon his assessment of Plaintiff's RFC.  In turn, the ALJ's RFC determination was premised upon his assessment of the opinion provided by Dr. LoDolce (a treating physician).   That assessment was flawed for the reasons outlined above and, as such, the step 5 analysis will need to be revisited on remand following a reassessment of Dr. LoDolce's opinion.

### e.      Failure to Follow Prescribed Treatment (Smoking)

In general, there are two standards for considering the impact of a claimant's failure to follow prescribed treatment.

SSR 96-7p provides, in pertinent part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

SSR 82-59 provides that a claimant may be "denied disability benefits if the Secretary finds that she unjustifiably failed to follow prescribed treatment and that if she had followed the treatment, she would not be disabled under the Act." McFadden v. Barnhart, No. 94 Civ. 8734, 2003 WL 1483444, at *8 (S.D.N.Y. Mar. 21, 2003)(citing 20 C.F.R. §§ 404.1530, 416.930, SSR 82-59).  The SSR 82-59 rule applies when the claimant has already been found to be disabled, but the ALJ concludes that she is not entitled to

benefits because compliance with the prescribed treatment would restore her ability to work.

In the present case, the ALJ placed heavy emphasis on the fact that Plaintiff is a smoker, mentioning that fact several times throughout his decision. (T at 23-25).   In particular, the ALJ found that the record indicated that Plaintiff "has not been following prescribed treatment, which treatment could restore [her] ability to work, and has offered no acceptable reasons for this failure." (T at 25).

The ALJ's reference to the ability of smoking cessation treatment to restore Plaintiff's "ability to work" suggests he was applying the rubric of SSR 82-59.  However, that rule does not supply the applicable standard because the ALJ did not find Plaintiff disabled in the first instance.  In other words, that rule would have applied if the ALJ found that Plaintiff was disabled, but that the disability would be removed if she quit smoking.  Here, the ALJ did not make an initial finding of disability and, as such SSR 82-59, did not apply.  See Dangerfield v. Barnhart, No. 04-CV-5271, 2006 WL 2927641, at *5 (E.D.Pa. Oct. 11, 2006)("SSR 82-59 applies . . .  if the ALJ determines that an individual's impairments preclude her from engaging in substantial gainful activity, *i.e.*, it applies . . . if the ALJ finds that the individual would otherwise be found to be disabled under the Act.").

Moreover, the ALJ did not cite, and this Court cannot find, any evidence in the record with regard to the effect, if any, that smoking cessation would have on Plaintiff's residual functional capacity.  Further, as discussed below, the ALJ failed to afford any consideration to the Plaintiff's reasons for failing to follow through with smoking cessation. As such, to the extent the ALJ relied upon SSR 82-59, that reliance was in error and the standard enunciated in that ruling was, in any event, not properly applied.

The ALJ could have considered Plaintiff's failure to quit smoking as impacting on the credibility of her complaints of disabling respiratory problems.  However, many people with chronic respiratory conditions (like COPD) are unable to quit smoking even though it aggravates their problems because of the incredibly addictive power of nicotine.

Indeed, "[g]iven the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health." Riechl v. Barnhart, No. 02-CV-6169, 2003 WL 21730126, at *13 (W.D.N.Y. June 3, 2003) (quoting Shramek v. Apfel, 226 F.3d 809, 812–13 (7th Cir.2000)). "One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the products impacts their ability to stop." Id.

As such, a claimant's failure to quit smoking will generally be "an unreliable basis on which to rest a credibility determination." Id.; see also Lavallee v. Astrue, 09–CV–1996, 2011 WL 49582, at *1 (D .Conn. Jan. 6, 2011) ("[T]o discount the severity of plaintiff COPD due to his own failure to heed his physicians' advice to stop smoking is unsound  . . . .").

In addition, as noted above, to the extent it was proper for the ALJ to consider Plaintiff's smoking as a basis for discounting her credibility, the ALJ was obliged to consider "any explanations" for Plaintiff's failure to comply with smoking cessation recommendations. See SSR 96-7p.  The ALJ faulted Plaintiff for failing to provide "acceptable reasons" for her failure to commit smoking.  (T at 25).  This finding is flatly contradicted by the record. Plaintiff attempted to stop smoking on several occasions, using multiple methods, including prescription medication, an inhaler, nicotine patches, and gum. (T at 40, 326-27, 337, 581). Dr. Sun noted that Plaintiff had difficulty tolerating the prescription medication because of

22

stomach problems and could not chew the gum because of dental issues. (T at 581).

Moreover, the ALJ never asked the Plaintiff to provide any reasons for failing to stop smoking.  The transcript contains the following exchange from the very end of the hearing before the ALJ:

> ALJ: Okay.  Do you smoke cigarettes?
>
> Plaintiff: I'm in the process of quitting.  I've been put on medication for it.
>
> ALJ: I'm not even going to ask what your doctor told you about smoking cigarettes.
>
> Plaintiff: To quit, yes.  I'm down to six cigarettes a day, so I'm doing extremely well, considering I was smoking a pack and a half, but I'm on a Nicotrol inhaler to help me quit.
>
> (T at 40).

In sum, the ALJ found that Plaintiff "continues to smoke against medical advice," (T at 25), but his decision evidences no consideration of Plaintiff's efforts to quit smoking or the explanations contained in the record regarding her difficulties in that regard.  Thus, the ALJ did not properly apply the standard enunciated in SSR 96-7p and his decision cannot be sustained.   A remand is therefore required for reconsideration of the evidence concerning Plaintiff's smoking and a clarification as to whether that evidence is being used in the assessment of Plaintiff's credibility (in which case SSR 96-7p applies) or whether it serves as a potential basis for denying benefits to an otherwise disabled claimant (in which event the ALJ will need to determine whether the requirements of SSR 82-59 have been satisfied).

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, this case is remanded for further proceedings consistent with this Decision and Order.

Further, given the ALJ's overemphasis on Plaintiff's smoking and complete failure to account for  record evidence explaining her difficulties in that regard, the Commissioner should strongly consider assigning the case to a different ALJ.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is DENIED, that Plaintiff's Motion for Judgment on the Pleadings is GRANTED, and that this case is remanded for further administrative proceedings pursuant to sentence four of Section 405 (g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

24

Dated:   May 8, 2012

      Syracuse, New York

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

May 8, 2012

Victor E. Bianchini
United States Magistrate Judge